UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ROBERT WILLIS MCKINNEY,                                                    Plaintiff,

v.                                                          Civil Action No. 3:17-cv-P28-DJH

ANGELA NAPIER *et al*.,                                                   Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Willis McKinney, an inmate incarcerated at Northpoint Training Center (hereinafter NTC), filed a *pro se* complaint under 42 U.S.C. § 1983 (DN 1).  This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the reasons that follow, the Court will allow (1) the retaliation claims against Defendants Napier and Wagiel based on their filing of false disciplinary charges against Plaintiff and (2) the legal mail claim against Defendant Wagiel to proceed.  All other claims and Defendants will be dismissed from this action.

**I. SUMMARY OF CLAIMS**

Plaintiff names the following four Defendants in this action:  (1) Angela Napier, a former Correctional Officer at NTC; (2) Michelle Wagiel, an Officer at NTC; (3) Charles Wilkerson, the Prison Rape Elimination Act (hereinafter PREA) Coordinator for the Kentucky Department of Corrections (hereinafter KDOC); and (4) Rodney Ballard, the Commissioner for the KDOC.  Plaintiff sues Defendants only in their individual capacities.  As relief, Plaintiff seeks monetary and punitive damages against Defendants Napier and Wagiel.  As to Defendants Wilkerson and Ballard, he seeks the Court to declare that Plaintiff "has a state created 'Liberty Interest' in the

CPP (Corrections Policies and Procedures) 3.22 and CPP 14.7 to be protected and treated as any PREA, 2003 victim." Further, he seeks the Court to declare that CPP 3.22 and CPP 14.7 create "a 'LIBERTY INTEREST' for all Kentucky inmates."

According to Plaintiff, Defendant Napier, while she was employed as a Correctional Officer at NTC, had a relationship with an inmate. Such relationship, Plaintiff states, was against "policy due to the fact she was a Correctional Officer and he an State Inmate." Plaintiff believes that Defendant Napier

> had reason to believe Plaintiff was aware of her actions and had started to take action against Plaintiff by filing false Displinary Reports and making unfounded claims concerning Plaintiff, thus attempting to have Plaintiff placed into segregation or try have his movement restricted from the area that she and [the inmate] preformed thier actions at, (LEGAL LIBRARY) in an attempt to hide her actions from the Plaintiff. She would call the Plaintiff offensive names, make fun of him for being an homosexual, deny him materials available to other inmates. She would yell at and disrespect Plaintiff on a daily basis. Her discrimination of the Plaintiff caused mental problems and caused pain due to the PTSD Plaintiff suffers from and is being treated for by method of medications and therpy.

Plaintiff states that he filed a complaint about the improper relationship between Defendant Napier and the inmate with Stephine Hughes, the Unit Administrator and the PREA monitor for NTC. Plaintiff's allegation, he represents, was confirmed through "video recorded evidence" resulting in Defendant Napier being "dismissed as a Correctional Officer due to the violation of the policy CPP 3.22 & CPP 14.7." According to Plaintiff, Ms. Hughes "made sure the Displinary Reports was removed from Plaintiff's record." Plaintiff states that Ms. Hughes "filed the report as inmate requested as a [PREA] violation." Plaintiff states that "this request was later DENIED," and "Plaintiff filed a 'Grievance' concerning the failure to comply with Policy CPP 14.7 and CPP 3.22."

Plaintiff asserts that CPP 14.7 and CPP 3.22 were created by the state in compliance with the PREA. Plaintiff states that the policies grant him "a 'liberty interest' in the 'State Created

2

Rights' contained within." Plaintiff states that denial of the protections contained in these policies violated the Fifth and Fourteenth Amendments. Plaintiff states that Warden Bottoms denied his grievance regarding this matter and that Defendant Ballard denied the appeal of the grievance.

Plaintiff states that Defendant Napier has a son that works for Aramark Food Service and a cousin who is a Unit Administrator at NTC. Plaintiff asserts that because of these relatives working at the Kentucky prisons "retaliation monitoring and completing the investigation would have been appropriate." Plaintiff states that the inmate involved in the sexual relationship with Defendant Napier was transferred to another facility, but Plaintiff requested he be placed on a no-contact list so that Plaintiff would not run the risk of being assaulted by him in the future, but this request was denied.

Plaintiff also alleges wrongdoing by Defendant Wagiel. Plaintiff states that he went to the legal library to pick up some legal mail. Plaintiff represents that he stood in a long line, but when he got to the front of the line, Defendant Wagiel "announced she had to use the rest room and shut down the legal mail give out line." When she returned, Plaintiff states that he got back in the line. According to Plaintiff, Defendant Wagiel had him sign the receipt indicating that he had received the legal mail. Plaintiff states that Defendant Wagiel

> opened one letter and gave [Plaintiff] the letter that was enclosed and retained the envelope and stated [Plaintiff] was not allowed to have the envelope that the address was printed on the letter it's self, second letter from [Plaintiff's] attorney she had [Plaintiff] to sign [Plaintiff] had received it and she opened the letter in front of [Plaintiff], started to pull the content out and part way she seen the name 'NAPIER' printed very large and stopped pulling it out, she looked at [Plaintiff] and stated she didn't have time to give it to [Plaintiff] and that [Plaintiff] would be able to get it tomorrow, [Plaintiff] protested that it was privledged mail and she had [Plaintiff] to sign [Plaintiff] had already received it and that it was open now, why do you not hand it to [Plaintiff]. She refused. This was just days after [Defendant] Napier had been fired . . . . [Defendants] Napier and Wagiel work posts that was side by side and was around each other alot and it would not be a

3

>stretch of circumstances to state they had become to know each other and was friendly toward each other. [Defendant] Wagiel had become very harassive toward [Plaintiff] in the days after [Defendant] Napier had been dismissed, in fact she had lodged a displinary report against [Plaintiff] earlier in the day concerning a another service she had denied [Plaintiff] with no reason, this report was later dismissed due to being found untruthful. The disrespectful manner in her treatment towards [Plaintiff] continued. . . . In this time frame she had made comments and slurs concerning homosexuals "minding their own business", made [Plaintiff] feel threatened due to the fraudulent actions she attempted to take against [Plaintiff] that would have deprived [Plaintiff] of freedom and good time loss if an PREA INVESTIGATOR had not took the time to look at the camera footage that confirmed [Plaintiff's] statement.

Plaintiff contends that Defendant Wagiel wanted to read Plaintiff's legal mail when she saw the name Napier on the document. Plaintiff states that he filed a grievance about this matter and that the grievance committee chairman "fraudulently stated [Defendant Wagiel] had followed the legal mail policy CPP 14.4." Plaintiff states that the retaliatory actions against him caused him "real fear, personal humiliation, mental anguish and suffering." Plaintiff states that her actions violated the First, Fifth, and Fourteenth Amendments as well as the liberty interest created by 28 C.F.R. § 115.67, CPP 14.7, and CPP 3.22.

Plaintiff asserts that Defendant Wilkerson failed to properly train and instruct the "local/institutional level PREA staff to lawfully maintain claims and reporting policies, and monitoring." Plaintiff states that Defendant Wilkerson "fails to follow the Federal Program, he manipulates the state reports to the Federal Administrator of the Grant to the state by training the investigators at the local level to not follow the program requirements to create the illusion that there are fewer Staff on Inmate PREA accounts than there actually are in reality." Plaintiff states that Defendant Wilkerson is the one who "made the final decision to refuse the retaliation monitoring in both case[s]" that Plaintiff had requested. He further states that "[t]he retaliation is clear due to [him] filing a grievance on the matter." Plaintiff asserts that Defendant Ballard "by his responses and lack of action shows he has a clear negligent indifference to this issue."

4

According to Plaintiff, "failure to report a crime as these two have done in this case in others seems to be a crime." Plaintiff states that he has endured "retaliation, suffering, humiliation, anguish and his lack of training or consorting to violate the directives of this Ferderal Program to protect me and others has violated my FIRST, FIFTH AND FOURTEENTH § AMENDMENTS as well as my Liberty Interest in the CPP 14.7, CPP 3.22."

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal

5

conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

#### A. Claims Against Defendant Ballard

As to Defendant Ballard, Plaintiff claims that he denied the appeals of Plaintiff's grievances. Plaintiff contends that by Defendant Ballard's "responses and lack of action," he has shown a "clear negligent indifference to the issue."

The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691-94 (1978); *see also Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009) ("[A] § 1983 claim must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.") (quotation omitted); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("Section 1983 liability will not be imposed solely upon the basis of respondeat superior."). Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).

Moreover, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Shehee v. Luttrell*, 199 F.3d at 300 (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Here, Plaintiff's § 1983 claims against Defendant Ballard are based upon the actions or inactions of other Defendants. Nothing in the complaint sets forth any action taken on the part of Defendant Ballard or shows how this Defendant was personally involved in the alleged wrongful conduct. Therefore, Plaintiff's § 1983 claims against Defendant Ballard will be dismissed for failure to state a claim upon which relief may be granted.

7

## B.  PREA Claims

To the extent Plaintiff seeks to bring claims under the PREA, such claims fail.  Although not addressed in the Sixth Circuit, several district courts, including the Western District of Kentucky, have found that the PREA, 42 U.S.C. § 15601 *et seq.*, "does not create a private cause of action which can be brought by an individual plaintiff."  *Sublett v. Henson*, No. 5:16CV-P184-TBR, 2017 WL 1660126, at *5 (W.D. Ky. Apr. 27, 2017); *see also Dickey v. Rapier*, No. 3:16-CV-P712-TBR, 2017 WL 1424803, at *5 (W.D. Ky. Apr. 19, 2017) (finding that the PREA does not create a private cause of action that can be brought by an individual); *Peterson v. Burris*, No. 14-cv-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016) (finding that the magistrate judge "did not err in her determination that the PREA does not provide prisoners with a private right of action"); *Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) ("There is no basis in law for a private cause of action under § 1983 to enforce a PREA violation."); *Holloway v. Dep't of Corr.*, No. 3:11VCV1290(VLB), 2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013) ("There is nothing in the PREA that suggests that Congress intended it to create a private right of action for inmates to sue prison officials for non-compliance to the Act."); *Faz v. N. Kern State Prison*, No. CV-F-11-0610-LJO-JLT, 2011 WL 4565918, at *5 (E.D. Cal. Sept. 29, 2011) ("The PREA was enacted to study the problem of prison rape.  Nothing in the Act suggests that it created a private right of action.  Accordingly, the PREA does not create a private right of action . . . .") (citation omitted); *Woodstock v. Golder*, No. 10-cv-00348-ZLW-KLM, 2011 WL 1060566, at *9 (D. Colo. Feb. 7, 2011) ("PREA provides no private right of action.") (citation omitted).

> The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue.  42 U.S.C. § 15601 *et seq.*  The statute does not grant prisoners any specific rights.  In the absence of "an 'unambiguous' intent to

confer individual rights," such as a right to sue, courts will not imply such a right in a federal funding provision.

*Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279-80 (2002)); *see also Jones v. Schofield*, No. 1:08-CV-7 (WLS), 2009 WL 902154, at *2 (M.D. Ga. Mar. 30, 2009) ("A reading of the Prison Rape Elimination Act makes clear that its goal is to lessen the occurrence of rapes in prisons across this Country. Its focus concentrates on statistics, standards, developing information, and regulating federal funding in an effort to lessen prison rapes. Nowhere in the language of the Act can It be interpreted to create a private *right* which may be enforced in a § 1983 action.").

Upon consideration, this Court also concludes that the PREA creates no private right of action. Plaintiff's claims brought under the PREA must, therefore, be dismissed.

### C. Claims Based on Violations of Corrections Policies and Procedures

Plaintiff alleges that Defendants Napier and Wilkerson violated CPP 3.22 and 14.7, and he seeks to bring claims for these violations asserting that these policies created a liberty interest that was violated. Failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim. *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("[S]tate law, by itself, cannot be the basis for a federal constitutional violation."); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (rejecting inmate's argument that prison failed to follow Michigan prison regulations in putting him in segregation); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney v. Farley*, 501 F.3d 577, 580-81 (6th Cir. 2007).

9

Accordingly, Plaintiff's claims based on violations of CPP 3.22 and CPP 14.7 will be dismissed.

### D. Claims Against Defendant Wilkerson

As to Defendant Wilkerson, Plaintiff alleges that he failed to properly train PREA coordinators. He alleges that Defendant Wilkerson trained "investigators at the local level to not follow the program requirements to create the illusion that there are fewer Staff on Inmate PREA accounts than there actually are in reality." As to this Defendant, Plaintiff also alleges that he improperly denied Plaintiff's request for retaliation monitoring based on Plaintiff's concern that relatives of Defendant Napier work in the prison and may retaliate against him.

As previously discussed, the PREA "does not create a private cause of action which can be brought by an individual plaintiff." *Sublett v. Henson*, 2017 WL 1660126, at *5. Also, as previously discussed, failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim. *Sandin v. Conner*, 515 U.S. at 481-82; *Smith v. City of Salem, Ohio*, 378 F.3d at 578 ("[S]tate law, by itself, cannot be the basis for a federal constitutional violation."). Thus, Defendant Wilkerson's alleged failure to properly train investigators regarding the PREA and the institution's policies and his alleged denial of the requested retaliation monitoring would also not give rise to a constitutional claim.

Accordingly, the claims against Defendant Wilkerson will be dismissed.

### E. Retaliation Claims

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct; and (3) "there is a causal connection between elements one and two-that is, the adverse action was motivated, at least in part, by the plaintiff's protected conduct." *Id.*

Plaintiff states that he was retaliated against by Defendants Napier and Wagiel for reporting the inappropriate relationship Defendant Napier was having with another inmate. It appears that Plaintiff states that it was filed as a PREA report but later filed as a grievance regarding failure to comply with Corrections Policies and Procedures. The filing of a non-frivolous grievance is protected conduct. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). For purposes of initial screening, the Court also will assume that reporting the inappropriate conduct of Defendant Napier and thereby initiating a PREA investigation was protected conduct for purposes of a First Amendment retaliation claim. *See Dickey v. Rapier*, No. 3:16-CV-P712-TBR, 2017 WL 1424803, at *4 (W.D. Ky. Apr. 20, 2017) (where the Court assumed for purposes of initial screening that plaintiff was engaged in protected conduct in reporting and initiating a PREA investigation).

The Court must next determine if the alleged adverse action taken against Plaintiff would deter a person of ordinary firmness from engaging in the conduct. Not every action is constitutionally cognizable. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *see also Thaddeus-X v. Blatter*, 175 F.3d at 396 ("It is not necessarily true, however, that ever action, no matter how small, is constitutionally cognizable."). "There is, of course a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. at 674. The adverse action necessary to state a constitutional violation must be such that it would "'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). This standard is an

objective inquiry which is flexible enough to accommodate the various circumstances in which retaliation claims arise and capable of screening the most trivial of actions. *Id*. at 398.

Plaintiff alleges that Defendant Napier called him offensive names, made fun of him for being a homosexual, yelled at him, and was disrespectful to Plaintiff on a daily basis. He also alleges that Defendant Wagiel made comments and slurs concerning homosexuals and was disrespectful toward him. As alleged, these comments and slurs are inappropriate and profane. Yet, the law is clear that verbal harassment and minor threats are not adverse actions that would deter a person of ordinary firmness or rise to the level of a constitutional violation. *See Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (failing to find that verbal harassment and minor threats were adverse actions that could deter a person of ordinary firmness from engaging in protected conduct); *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002) (failing to find that verbal harassment and minor threats were adverse actions that could deter a person of ordinary firmness from engaging in protected conduct); *Thaddeus-X v. Blatter*, 175 F.3d at 398 (stating that "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations . . ."); *see also Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (holding verbal abuse of mouthing "pet names" at prisoner for ten months failed to rise to the level of a constitutional violation); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (per curiam) (holding that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual orientation cannot state an Eighth Amendment claim); *Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").

Thus, the retaliation claims against Defendants Napier and Wagiel based on verbal harassment and comments will be dismissed.

Plaintiff also alleges that Defendant Napier filed false disciplinary reports against him attempting to have him placed in segregation and having his movement restricted. He alleges that Defendant Wagiel filed a false disciplinary report against him. According to Plaintiff, these disciplinary charges were dismissed. Despite the dismissal of the disciplinary charges, the Court concludes that Plaintiff has sufficiently alleged an adverse action. *See Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) ( "Although Brown was already in administrative segregation and a hearing officer ultimately found him not guilty, the issuance of the major misconduct charge subjected him to the risk of significant sanctions . . . . A reasonable jury could conclude that being subjected to the risk of such severe sanctions for raising a legitimate complaint 'would deter a person of ordinary firmness from continuing to engage in that [protected] conduct.'") (citations omitted).

Upon consideration, the Court will allow the retaliation claims against Defendants Napier and Wagiel regarding the filing of false disciplinary charges against Plaintiff to proceed.

### F.  Legal Mail Claim

Plaintiff alleges that Defendant Wagiel opened a piece of incoming legal mail in front of him and made him sign for it, but when she saw Defendant Napier's name on the document, she refused to give it to him until the following day. Plaintiff contends that this was because Defendant Wagiel was friends with Defendant Napier and she wanted to read the document. The Sixth Circuit has held that opening/reading inmates' mail in an arbitrary or capricious fashion may violate inmates' First Amendment rights. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) (finding that "a capricious interference with a prisoner's incoming mail based upon a

guard's personal prejudices violates the First Amendment"); *see also Reneer v. Sewell*, 975 F.2d 258, 259-60 (6th Cir. 1992) (applying holding of *Parrish* to partially reverse district court's order granting summary judgment and stating that "if the mail was actually read, and this action was motivated by retaliation as plaintiff alleges, such behavior by prison officials might constitute the type of arbitrary action proscribed in *Parrish*, 800 F.2d at 604").

Upon consideration, the Court will allow Plaintiff's legal mail claim to proceed against Defendant Wagiel.

## IV. CONCLUSION AND ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) That the claims against Defendant Ballard are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(2) There being no remaining claims against him, **Defendant Ballard** is **DISMISSED** from this action;

(3) That the PREA claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(4) That the claims based on violations of Corrections Policies and Procedures are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(5) That the claims against Defendant Wilkerson are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) ) for failure to state a claim upon which relief may be granted;

(6) There being no remaining claims against him, **Defendant Wilkerson** is **DISMISSED** from this action; and

(7) That the retaliation claims against Defendants Napier and Wagiel based on verbal harassment and comments are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The **Clerk of Court** is **DIRECTED** to **terminate Defendants Ballard and Wilkerson** as Defendants from the docket of this action.

**IT IS FURTHER ORDERED** that:

(1) The retaliation claims against Defendants Napier and Wagiel based on their filing false disciplinary charges against Plaintiff will proceed; and

(2) The legal mail claim against Defendant Wagiel will proceed.

The Court passes no judgment on the merits or ultimate outcome of this case. The Court will enter a separate Scheduling Order and Order Directing Service.

Date: May 24, 2017

**David J. Hale, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Defendants
    General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4415.003